IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:17-cv-01478 |
| | ) Judge Aleta A. Trauger |
| CARE SERVICES MANAGEMENT LLC *et al.*, | ) |
| | ) |
| Defendants.[1] | ) |

**MEMORANDUM**

Before the court is the Motion for Review of Nondispositive Order of Magistrate Judge, filed by defendants Care Services Management, LLC ("CSM") Marquis Health Systems, LLC, Marquis Mobile Dental Services, LLD, Mark Napper, Josh Kilgore, Daniel Bird, and Excel Health Group, LLC (collectively, "defendants"). (Doc. No. 378.) The defendants request review of the Magistrate Judge's Order ("Sanctions Order") (Doc. No. 377), which granted in part the Motion for Attorneys' Fees (Doc. No. 323) and Motion for Entry of Order Implementing the Court's Previously Described Sanctions ("June 2024 Motion for Sanctions") (Doc. No. 325), filed by plaintiff-intervenor the State of Tennessee.[2] The State opposes the Motion for Review. (Doc. Nos. 380, 381.)

---

[1] As the Magistrate Judge has repeatedly observed, several individual defendants who are named in prior versions of the Complaint are not specifically named in the relator's Supplemental Second Amended Complaint. (*Compare* Second Am. Compl. in Intervention. Doc. No. 214, *with* relator's Suppl. Second Am. Compl., Doc. No. 231.)

[2] Although the listed defendants collectively filed the Motion for Review, the State's Motion for Sanctions was addressed only to CSM.

For the reasons set forth herein, the Motion for Review will be granted, and the court will vacate that portion of the Sanctions Order to which the defendants have lodged objections.

I.     STANDARD OF REVIEW

Magistrate judges generally have authority to enter orders regarding non-dispositive pre-trial motions but must submit report and recommendations for dispositive motions. 28 U.S.C. § 636; Fed. R. Civ. P. 72. "With few exceptions, orders concerning pre-trial discovery matters including the imposition of monetary sanctions for violations under Rule 37 are considered to be non-dispositive." *Builders Insulation of Tenn., LLC v. S. Energy Sols.*, No. 17-CV-2668-TLP-TMP, 2020 WL 265297, at *4 (W.D. Tenn. Jan. 17, 2020) (citations omitted). The parties here agree that the Sanctions Order is a non-dispositive pretrial matter.[3]

When a magistrate judge issues a non-dispositive order, any party has fourteen days within which to "serve and file objections to the order." Fed. R. Civ. P. 72(a). The district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

"This standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo*." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). A legal conclusion is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* "A [factual] finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

---

[3] Motions for sanctions under Rule 37 differ from motions for sanctions under Rule 11, which the Sixth Circuit consider to be dispositive. *Bennett v. General Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 997 (6th Cir. 1992).

firm conviction that a mistake has been committed." *Id.* (citation omitted).

## II.   BACKGROUND

This opinion presumes familiarity with the history of this long-pending case and will only relate in detail the background necessary to an understanding of the present motion.

In that part of the Sanctions Order regarding the State's Motion for Attorneys' Fees, the Magistrate Judge awarded fees, albeit somewhat less than the amount requested, as a sanction to compensate the State for the costs of bringing the State's Second Motion to Compel and for Sanctions (Doc. No. 233), which the Magistrate Judge granted in part in July 2023 (Doc. No. 256). The defendants do not challenge, and this ruling does not address, that portion of the Sanctions Order.

The Sanctions Order also granted in part the State's June 2024 Motion for Sanctions, brought only against defendant CSM (Doc. No. 325). As the State explained in support of that motion, on July 20, 2023, the Magistrate Judge entered an Order ("July 2023 Order") (Doc. No. 256), granting in part the State's Second Motion to Compel (Doc. No. 233). On January 4, 2024, the Magistrate Judge entered an Order denying the defendants' Motion for Relief from Discovery Order (Doc. No. 277), which essentially sought reconsideration of part of the July 2023 Order.

The July 2023 Order outlined the history of the discovery disputes plaguing the case through the date of that Order, noting, in particular, that, in an Order entered in October 2022 (Doc. No. 187), the court had granted the State's initial Motion to Compel (Doc. No. 183) (to which the defendants had not responded), finding the State's requested discovery relevant and the defendants' objections meritless, directing the defendants to provide complete responses to the outstanding discovery by November 10, 2022, and warning the defendants that a failure to comply could result in the imposition of sanctions. (*See* Doc. No. 256 at 6.)

Following "extensive correspondence between the Parties," the State filed its Second Motion to Compel in April 2023, requesting an order that, among other things, (1) awarded attorney fees under Rule 37(a)(5)(A); (2) directed that "the facts sought . . . regarding Request for Production ["RFP"] No. . . . 18 are established for purposes of the litigation" and that the defendants would be precluded from introducing contrary evidence; and (3) directed the defendants to produce "all documents responsive to [RFPs] 18 and 19." (Doc. No. 256 at 7 (quoting Doc. No. 234 at 23–24).) Notably, RFPs 18 and 19 were not addressed in the State's first Motion to Compel, so the Magistrate Judge addressed these requests for the first time in the context of ruling on the Second Motion to Compel.

Specifically regarding RFP 18, which sought

> all operating agreements, articles of incorporation, organizational bylaws, partnership agreements, or internal governance documents or agreements that were in effect for CSM, MHS, and MMDS at any point during the relevant time period

(*id.* at 24 (quoting Doc. No. 234-2 at 31)), the defendants argued that this information was not relevant to any claim at issue. The State responded that the information was relevant because it alleged that "one of those companies is an alter ego and mere continuation of the other." (Doc. No. 234 at 19.) The Magistrate Judge rejected the defendants' relevance arguments and ordered the production of the requested corporate documents for the three organizational defendants.

RFP 19 requested "all communications during the relevant time period by or between" the defendants, their "Tennessee Facilities," and their "Tennessee Provider Affiliates" discussing the "'one zero liability resident to every six Item-D [IME] eligible residents' clause of the agreements." (Doc. No. 256 at 25 (quoting Doc. No. 234-2 at 32).) The defendants' response to this request was that they were not in possession of any responsive documents, but they elaborated in their Response brief that "Tennessee placed that phrase in quotations and the Defendants conducted that search. No documents were found." (Doc. No. 244 at 17.) Without specifically

addressing the State's arguments that the defendants' decision to thus narrow their search was a bad faith interpretation of the request, the Magistrate Judge found that the information sought was relevant and discoverable, that the defendants had not raised a viable argument to the contrary, and that the parties had already agreed to search terms to be used to conduct the search for relevant documents. The court ordered the defendants to produce

> all non-privileged responsive documents generated by running the search terms that the Parties agreed upon, including "(Zero or 0) /2 liability," "ZL," "Incurred Medical Expense Deductions," "IME" /5 (deduct! or pay! or exp! or delinq! or late!), "Incurred medical expense," and "Delinquent /10 "Incurred Medical expense" . . . .

(Doc. No. 256 at 25.)[4]

The July 2023 Order also awarded attorney fees to the State and imposed other sanctions related to the granting of relief requested in other parts of the State's Second Motion to Compel. (*See, e.g.*, *id.* at 13 (ordering a fact as conclusively determined based on the defendants' "evasive and incomplete" answer to Interrogatory No. 6); *id.* at 18 (ordering the same sanction related to the defendants' insufficient answer to Interrogatory No. 11).)

The July 2023 Order required the defendants to supplement their discovery answers by August 8, 2023. (*Id.* at 24, 25.) The defendants sought an extension of that deadline, which the Magistrate Judge granted promptly, extending the deadline until August 18, 2023. (Doc. Nos. 260, 262.) The defendants filed two additional motions seeking to extend the deadline until September

---

[4] The parties had entered into a Joint Stipulation Regarding Electronic Discovery Protocol, which they filed on January 20, 2023. (Doc. No. 201-7.) The Joint Stipulation identified "custodial data sources," a date range, and also specified that the parties would collect information "in the form and manner it is kept in the normal course of business, which may not involve ESI or associated metadata." (*Id.* at 1, 3.) They agreed that the defendants would produce documents "via a load file compatible with a document review database," that "e-mails responsive to keyword searches will be converted to PST files, with associated metadata," and that "[a]ll other data sources will be collected as electronic images or converted to an electronic image format and may not have associated metadata." (*Id.* at 5.)

15, 2023 and then October 16, 2023 (Doc. Nos. 263, 270); in October 2023, while those motions were pending, the defendants filed a Motion for Relief from the July 2023 Order (Doc. No. 277).

On January 4, 2024, the Magistrate Judge issued an Order ("January 4, 2024 Order") denying the Motion for Relief from the July 2023 Order and directing the defendants to fully comply with that Order by January 30, 2024 or risk "sanctions additional to those already imposed." (Doc. No. 291 at 9.) The next day, on January 5, 2024, the Magistrate Judge denied as moot the two still-pending motions to extend the defendants' deadline to comply with the July 2023 Order, noting that the requested extended deadlines had already passed and that the court had reset the compliance deadline for January 30, 2024. (Doc. No. 296 at 2 (citing Doc. No. 291).) In other words, the Magistrate Judge made it clear that the deadline for compliance with the July 2023 Order was extended in all respects to January 30, 2024.

More water passed under the bridge, and the parties continued to bicker about discovery. The State filed its Motion for Sanctions (Doc. No. 325) in June 2024. In this motion, the State acknowledged that the Magistrate Judge had granted the defendants' "First Motion for Extension . . . , thereby extending the date of production to August 18, 2023." (Doc. No. 326 at 2.) It also noted that the Magistrate Judge had denied the defendants' Motion for Relief and given them until January 30, 2024 to fully comply with the July 2023 Order or face "sanctions additional to those already imposed." (*Id.* (quoting Doc. No. 291 at 9).) The State argued, "[b]ased on this language," that the January 4, 2024 Order did not operate "as an extension of [the defendants'] August 18, 2023 deadline to avoid those sanctions already described in the Court's July 2023 Order." (*Id.*) Instead, according to the State, the January 4, 2024 Order was simply a "deadline to avoid 'additional' sanctions." (*Id.*) The State further asserted that, in any event, the defendants had not

fully complied with the July 2023 Order by January 30, 2024, because they still had not produced, as relevant here, responses to RFP 18. (*Id.*)

The State also construed the July 2023 Order as outlining "conditional sanctions," including the following:

- For [RFP] 18, if [the defendants] failed to produce their corporate governance documents, "the Court will consider the imposition of appropriate sanctions."

- For [RFP] 19, if [the defendants] failed to supplement with responsive communications based on the running of mutually agreed upon search terms, then the Court ordered it "will order that for the purposes of this litigation, it is established that Defendants enforced the 'six for one' term in order to ensure their profitability and that Defendants are precluded from introducing any evidence to the contrary."

(Doc. No. 326 at 5 (quoting Doc. No. 256 at 24, 26).) According to the State, the January 4, 2024 Order established that "these conditional sanctions became effective when [the defendants] failed to provide supplemental responses to . . . [RFPs] 18 and 19 by August 18, 2024." (*Id.*)

The defendants filed a Response stating that they "completed [their] [electronically stored information ("ESI")] production on February 28, 2024. (*Id.* at 3.) The defendants indicated that they continued to work with the State and their e-discovery vendor to satisfy the State's continued objections following that date. (Doc. No. 334 at 3–5.) Regarding RFPs 18 and 19 specifically, the defendants responded that they had initially tried to handle the production of ESI internally and had produced an initial set of results and that, following the hiring of an e-discovery vendor, they had completed production using the agreed-upon search terms and stood prepared to produce the ESI responsive to RFP 19 in a "load file" but were "still waiting to hear from the State of Tennessee regarding the search term hit report." (Doc. No. 334 at 5.)

The State filed a Reply, generally disputing the adequacy of the ESI production but not specifically addressing the defendants' statement that they had produced documents responsive to RFPs 18 and 19. (Doc. No. 335.)

After briefing on the State's Motion for Sanctions was fully completed, the parties continued to grapple with the scope of the defendants' ESI production. The defendants filed their Motion for Protective Order in August 2024, barely a month after the State filed its Reply in support of the Motion for Sanctions (Doc. No. 357). In October 2024, while the Motion for Sanctions was still pending, the Magistrate Judge entered an Order (Doc. No. 366) granting in part the defendants' Motion for Protective Order. More specifically, the defendants' motion asked the court to limit the discovery of ESI, based on the sheer quantity of documents that had already been produced using the parties' agreed-upon search terms, or, alternatively, that the court limit the defendants' responsibilities in the handling of the ESI production by ordering that (1) the defendants were not required to reduce the size of the data set or to review each document for responsiveness prior to production; (2) the expense of reducing the data set and generating a load file should not be shifted to the defendants; and (3) "discreet document requests have been superseded by the ESI Stipulation and Defendants are not required to separately answer them." (Doc. No. 366 at 4 (quoting Doc. No. 357 at 3–4).)

The defendants argued in support of that third request that they had been "operat[ing] under the assumption that the ESI Stipulation and the resulting custodial data sources and the search terms supersede any discreet document request because it involves the same documents and would be duplicative." (Doc. No. 357 at 3.) The State objected to this interpretation, and the Joint Stipulation was silent on this topic. The Magistrate Judge noted that, while it "clearly would have been preferable for the Parties to discuss this issue and reduce their agreements to writing," "the whole purpose of the search methodology using agreed-upon custodians and terms is to identify ESI that is responsive to document requests." (Doc. No. 366 at 10.) Because the parties had agreed that the data would be produced "in the form and manner it is kept in the normal course of

business," the Joint Stipulation could only be reasonably construed to mean that the defendants were not required to segregate the ESI produced by identifying to which request(s) it responded. (*Id.*; *see also id.* ("The Court cannot envision how Defendants would separate the responsive documents by document request, except by a document-by-document review that would be entirely disproportionate to the needs of the case.").) The court further noted that the State would have the ability to manipulate the data it received and to categorize the documents however it chose and ultimately held that the defendants would not be required to "separate their ESI production into discrete document requests." (*Id.*)

After ruling on the Motion for Protective Order, the Magistrate Judge, in January 2025, addressed the Motion for Sanctions and the parties' ongoing issues with ESI. Regarding the State's "additional sanctions" argument, the Magistrate Judge stated: "There is no question that Defendants did not comply with the Court's original Order regarding this discovery dispute by the Court's extended deadline of August 18, 2023; indeed, Defendants do not argue otherwise. Therefore, the Court will impose the sanctions laid out in that order." (Doc. No. 377 at 16 (internal record citations omitted).) The Magistrate Judge further found that "additional" sanctions were warranted by CSM's admitted failure to comply with the extended deadline of January 30, 2024. As relevant, based on both findings, the Magistrate Judge ordered:

> 3. CSM failed to comply with the Court's July 20, 2023 Order regarding Request for Production of Documents No. 18. Therefore, it is factually established that the individual Defendants enjoy no liability protections from CSM and shall be jointly and severally liable for any judgment entered against CSM.
>
> 4. CSM failed to comply with the Court's July 20, 2023 Order regarding Request for Production of Documents No. 19. Therefore, it is factually established that CSM enforced the "six for one" term to ensure its profitability and CSM is precluded from introducing any evidence to the contrary.
>
> 5. For the purposes of this litigation, it is factually established that every contract between CSM and its providers between January 1, 2013, and the present contained the "six-for-one" provision and the provision was either drafted by CSM, included

> at its request, or CSM was aware of the provision in the contract and intentionally chose to leave it in.

(*Id.* at 18.) Paragraphs 3 and 4 apparently are in response to the State's "additional sanctions" argument; Paragraph 5 relates to the defendants' failure to meet the January 30, 2024 deadline.

These three provisions of the Sanctions Order are the subject of the defendants' Motion for Review. The defendants rely on the Magistrate Judge's ruling on their Motion for Protective Order, in particular the conclusion that the defendants would not be required to separate their "ESI production into discrete document requests." (*See* Doc. No. 366 at 10.) They contend that they have produced the ESI they are required to produce and that the Order sanctioning CSM for failing to provide separate responses to two discrete RFPs (18 and 19) is inconsistent with the directive that they did not have to serve separate responses to each RFP. The defendants also assert that ordering a binding factual determination "that every contract between CSM and its providers between January 1, 2013 and the present contained the 'six-for-one' provision and the provisions was either drafted by CSM, included at its request, or CSM was aware of the provision in the contract and intentionally chose to leave it in" (Doc. No. 377 at 18) is "clearly erroneous," because the State was provided a copy of all "provider and LTC facility agreements" even before it intervened, and the agreements were provided again in 2023 and 2024. (Doc. No. 379-1 at 7 (citing Zenner Decl. Doc. No. 337-5 ¶ 12).) The defendants assert that these agreements "speak for themselves and any sanction that alters the language of documents which the State of Tennessee has had in its possession since before it entered the litigation is clearly erroneous and patently unfair." (*Id.*).

In its Response, the State makes much of the Magistrate Judge's statement, in the January 2024 Order, that failure to comply with the new January 30, 2024 response deadline "may result in the imposition of sanctions *additional to those already imposed*." (Doc. No. 291 at 9, *quoted in*

Doc. No. 381 at 4 (emphasis added by the State).) It notes that the Magistrate Judge expressly found that the defendants admittedly had not complied with the extended deadline of August 18, 2023 and, "on that basis, . . . imposed the sanctions described in its July 20, 2023 Order." (Doc. No. 381 at 6.) And the Magistrate Judge imposed as an "additional sanction," number 5 above, based on the defendants' failure to comply with the January 30, 2024 deadline.

## III. DISCUSSION

Despite the defendants' noted failure to address the State's "additional sanctions" argument, the court finds the State's interpretation of the January 2024 Order to be patently erroneous and unreasonable. The Magistrate Judge accepted the State's version of events uncritically based largely on the defendants' failure to offer a counterpoint, but that does not make it less plainly erroneous. Neither party acknowledges the Magistrate Judge's January 5, 2024 Order, in which he denied as moot the defendants' two still-pending motions to extend the production deadline and reaffirmed that the extended deadline for responding to discovery was January 30, 2024. (*See* Doc. No. 296.) The term "sanctions already imposed," as used in the July 2023 Order (and the January 2024 Order), quite clearly was referring to the attorney fees award and the defendants' failures to respond to Interrogatory Nos. 6 and 11 after being compelled to do so in the ruling on the State's first Motion to Compel. (*See* Doc. No. 256 at 13, 18.) Paragraphs 3 and 4 of the Sanctions Order, sanctioning the defendants for failing to comply with the August 18, 2023 deadline for producing documents in response to RFPs 18 and 19, when the deadline had clearly been extended to January 30, 2024, therefore, are not warranted and are clearly erroneous.

Moreover, regarding Paragraph 5, while the parties have fought at every step of discovery, the court cannot find that the defendants' February 28, 2024 production was in bad faith or that it amounted to a flouting of the Magistrate Judge's firm January 30, 2024 deadline, particularly given the parties' continued communications and the defendants' efforts to produce ESI discovery both

before and after that date. Moreover, it is unclear to what extent the issues raised in the Motion for Sanctions (filed in June 2024) were addressed in or mooted by—or simply further confused by—the Magistrate Judge's ruling on the Motion for Protective Order in October 2024. The court is left with a firm conviction that the sanction of deeming every provider contract as containing the referenced "six-for-one" provision is clearly erroneous.

## IV. CONCLUSION

Because the court finds that the Sanctions Order was clearly erroneous with respect to the interpretation of the prior discovery orders and patently unfair in light of the difficulties posed by the production of ESI and the parties' understanding of their obligations, the Motion for Review (Doc. No. 378) will be granted, and the court will reverse and vacate that portion of the Sanctions Order (Doc. No. 337) to which objections were lodged—specifically, Paragraphs 3–5 on page 18 of Doc. No. 377.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge